# Judge Hellerstein

BLANK ROME, LLP
Attorneys for Plaintiff
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY 10006
(212) 885-5149

**07 CIV 9646**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OCT 30 2007
U.S.D.C. S.D.N.Y.
CASHIERS

---

USL SHIPPING FZE,

          Plaintiff,

      v.

JINYANG SHIPPING CO., LTD.,

          Defendant.

---

07 Civ.

**VERIFIED COMPLAINT**

Plaintiff USL SHIPPING FZE ("USL"), as Charterer of the M/V HUYUTEC, by its attorneys Blank Rome, LLP, complaining of the above-named Defendant JINYANG SHIPPING CO., LTD. ("JSC"), alleges upon information and belief as follows:

1.    This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has subject matter jurisdiction.

2.    At all material times, USL was and now is a foreign company organized and existing under the laws of United Arab Emirates and the charterer of the Motor Vessel HUYUTEC (the "Vessel").

900200.00001/6586214v.1

3.    At all material times, defendant JSC was and now is a corporation organized and existing under the laws of Korea.

## THE BASIC FACTS

4.    JSC as a disponent owner chartered the Vessel to USL, as charterer, by charter party dated April 2, 2007 (the "Charter").

5.    JSL wrongfully repudiated the Charter causing damages of $144,567.

6.    JSL failed to pay USL the sum of $193,042 due under the Charter.

7.    This action is expressly filed without prejudice to any right of arbitration under the Charter, which stipulates Hong Kong arbitration.

## COUNT I

## RULE B RELIEF

8.    Plaintiff repeats paragraphs 1 through 7 as if fully set forth herein.

9.    Plaintiff seeks issuance of process of maritime attachment so that it may obtain security for its claims including its attorneys' fees and arbitrators' fees which are routinely awarded in Hong Kong arbitration and no security for Plaintiff's claim has been posted by JSC or anyone acting on its behalf to date.

10.    At best as can now be estimated, Plaintiff expects to recover the following amounts in the arbitration:

| | | |
|---|---|---|
| A. | On the principal claim | $337,610 |
| B. | Estimated Recoverable English Lawyers and Arbitrators' Fees & "Costs" | $120,000 |
| C. | Interest over the course of 3 years at prime rate average of 8% per annum: | $ 81,026 |
| | **TOTAL:** | $538,636 |

11.     Defendant cannot be found within this district within the meaning of Rule

B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal

Rules of Civil Procedure ("Rule B"), but is believed to have, or will have during the

pendency of this action, assets in this jurisdiction.

**WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against JSC, citing it to appear and

answer under oath all and singular the matters alleged in the Verified Complaint;

B.     That since JSC cannot be found within this District pursuant to Rule B, this

Court issue an Order directing the Clerk of Court to issue Process of Maritime

Attachment and Garnishment pursuant to Rule B attaching all of JSC's tangible or

intangible property or any other funds held by any garnishee, which are due and owing to

JSC up to the amount of $538,636 to secure the Plaintiff's claims, and that all persons

claiming any interest in the same be cited to appear and, pursuant to Rule B, answer the

matters alleged in the Verified Complaint;

C.     That this Court retain jurisdiction over this matter through the entry of a

judgment or award associated with the pending claims including appeals thereof.

D.    That Plaintiff may have such other, further and different relief as may be just and proper.

Dated: New York, NY
       October 30, 2007

                          Respectfully submitted,
                          BLANK ROME, LLP
                          Attorneys for Plaintiff

                          By
                          Jeremy J.O. Harwood (JH 9012)
                          405 Lexington Avenue
                          New York, NY 10174
                          Tel.: (212) 885-5000

## **VERIFICATION**

STATE OF NEW YORK     )
                                         : ss.:
COUNTY OF NEW YORK   )

Jeremy J.O. Harwood, being duly sworn, deposes and says:

1.      I am a member of the bar of this Honorable Court and of the firm of Blank
Rome, LLP, attorneys for Plaintiff.

2.      I have read the foregoing Complaint and I believe the contents thereof are
true.

3.      The reason this Verification is made by deponent and not by Plaintiff is that
Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4.      The sources of my information and belief are documents provided to me
and statements made to me by representatives of Plaintiff.

_____
Jeremy J.O. Harwood

Sworn to before me this
30th day of October 2007

_____
Notary Public

NEAL MITCHELL
Notary Public, State of New York
No. 01MI6114448
Qualified in New York County
Commission Expires Aug. 16, 20__

BLANK ROME, LLP
Attorneys for Plaintiff
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| USL SHIPPING FZE, <br><br>          Plaintiff, <br><br>     v. <br><br> JINYANG SHIPPING CO., LTD., <br><br>          Defendant. | 07 Civ. <br><br> **AFFIDAVIT UNDER** <br> **SUPPLEMENTAL RULE B** |

STATE OF NEW YORK   )
                   : ss.:
COUNTY OF NEW YORK   )

      JEREMY J.O. HARWOOD, being duly sworn, deposes and says:

      1.    I am a member of the Bar of this Honorable Court and a member of the

firm of Blank Rome, LLP, attorneys for the Plaintiff herein. I am familiar with the

circumstances of the complaint and submit this affidavit in support of Plaintiff's request

for the issuance of process of maritime attachment and garnishment of the property of

defendant JINYANG SHIPPING CO., LTD., as Owner of the M/V HUYUTEC, a

company organized and existing under the laws of Korea, pursuant to Rule B of the

Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

2.    The defendant is not incorporated or registered to do business in this State.

3.    Under my supervision, my office did a search of the New York State Secretary of State, Division of Corporations, Transportation Tickler (2006 edition), telephone assistance in New York City, and the internet Yellow Pages.

4.    In our search, we did not find any listing or reference to defendant in this district or state.

5.    In the circumstances, I believe the defendants cannot be "found" within this district.

6.    I attach as Exhibit 1 hereto a copy of the Charter party dated April 2, 2007.

_____
Jeremy J.O. Harwood

Sworn to before me this
30th day of October, 2007

_____
Notary Public

NEAL MITCHELL
Notary Public, State of New York
No. 01MI6114408
Qualified in New York County
Commission Expires Aug. 16, 20__

# EXHIBIT 1

# Time Charter

### GOVERNMENT FORM

*Approved by the New York Produce Exchange*

November 6th, 1913-Amended October 20th, 1921; August 6th, 1931; October 3rd,1946

1 **This Charter Party** made and concluded in..........**Dubai, 02nd**.....................day of...... **April   2007**............

2 Between............ **JINYANG SHIPPING CO., LTD.** ........................................................................................

3 Owners of the good.........**Hong Kong** flag.........Steamship{Motorship}.................. **"MV HUYUTEC"**.........of .....................................

4 of...**16,079**..tons gross register, and ......**9,951**.....tons net register, having engines of...........indicated horse power

5 and with hull, machinery and equipment in a thoroughly efficient state, and classed...........................................

6 at.......of about......**33,329**.....cubic *meters grain*  feet-bale capacity, and about...**26,354 metric** tons of 2240 lbs.

7 deadweight capacity   (cargo and bunkers, including fresh-water and stores not exceeding  one and one-half

7 percent of ship's deadweight capacity,

8 allowing a minimum of fifty tons) on a draft of...**9.964**.........feet *meter* inches on *salt* Summer

8 freeboard, inclusive of permanent bunkers,

9 which are of the capacity of about ....... tons of fuel, and capable of steaming, fully laden, under good weather

10 conditions about.............knots on a consumption of about.................tons of best Welsh coal best grade fuel oil best grade Diesel oil, **(See Clause 63.)**

11 now...................and...**trading**.............................................................................................................................

12 .......and...**USL Shipping FZE.** .........Charterers of the City of.......**Dubai, U.A.E.** .................

13     **Witnesseth,** That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for

14 about  **time charter period minimum 60 days maximum 90 days via safe berth(s), safe port(s) safe anchorage(s), always afloat, always accessible, always within I.W.L.** .....................

15 ............................................................................................................... within below mentioned trading limits.

16 Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for

17 the fulfillment of this Charter Party.

18 Vessel to be placed at the disposal of the Charterers, at...**on dropping last outward sea pilot one safe port**

19 **of U.A.E anytime day or night, Sunday and holidays included (Int. Jebel All)** ........................

20 in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No.6), as

21 the Charterers may direct. If such dock, wharf or place be not available time to count as provided for in clause No. 5. Vessel on her delivery **this Charter period** to be

22 ready to receive **any permissible** cargo with dry clean-swept holds **washed down by fresh water and dried up**   and **weather**tight, staunch, strong and in every way fitted for the **ordinary cargo** service having water ballast, winches and

23 donkey boiler with sufficient steam   power, or if not   equipped   with donkey   boiler, then other power

sufficient to run all the winches at one and the same

24 time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), **throughout the period of this Charter vessel** to be employed in carrying lawful merchandise,

25 including petroleum or its products, in proper containers, excluding........... **See Clause 88** ......................

26 (vessel is not to be employed in the carriage of Live Stock, but Charterers are  to have the privilege of shipping a small number of deck

at their risk,

27 all necessary fittings and other requirements to be for account of Charterers), in such lawful trades,

between safe port and/or ports in British North

28 America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean

Sea, and/or Gulf of Mexico, and/or

29 Mexico, and/or South America.........................................................................................and/or Europe

30 and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St.

Lawrence between

31 October 31st and May 15th, Hudson Bay and all unsafe ports; also excluding, when out of season, White

Sea, Black Sea and the Baltic,

32 *within Institute Warranty Limits, See Clause 87* ....................................................................................

33 ..................................................................................................................................................

34 ..................................................................................................................................................

35 as the Charterers or their Agents shall direct, on the following conditions :

36    1. That the Owners shall provide and pay for all and provisions, ***drinking water*** wages and consular shipping and discharging fees of the Crew; shall pay for the

37 insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including drinking water, lubricating oil and garbage if only compulsory boiler water and maintain her class and keep

38 the vessel in a thoroughly efficient state in hull, machinery and equipment ***with all certificates necessary to comply with requirements as ports of call and canal*** for and during the service.

39    2. That ***whilst vessel on hire*** the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, ***Customary,*** Pilotages, ***including pilotage in Bosporus and Charterers will pay customary case and pilot requested by Master in Dardanelles and great bell,*** Agencies, ***canal tolls,*** Commissions.

40 Consular Charges (except those pertaining to the Crew ***and flag***), and all other usual expenses except those before stated, but when the vessel puts into

41 a port for causes for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of

42 illness of the crew to be for Owners account. Fumigation ordered because of cargoes carried or ports visitede while vessel is employed under this

43 charter to be for Charterers account. All other fumigations to be for Charterers account after vessel h as been on charter for a continuous period

44 of six months or more.***(See Clause 40)***

45    Charterers are to provide necessary dunnage ***lashing materials*** and shifting boards, also any extra fittings requisite for

45 a special trade or unusual cargo, but

46 Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the    privilege of using shifting boards

47 for dunnage, they making good any damage thereto.

48    3. That the Charterers,   at the port of delivery,   and the Owners,   at the port of re-delivery, shall

48 take over and pay for all fuel remaining on

49 board the   vessel at the   current prices in the respective   ports, the vessel to   be delivered with not

49 less than.....................................................................................................................tons and not more than

50 ...tons and to be re-delivered with not less than...tons and not more than.........................tons.***(See Clause 30)***

51    4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of...***USD 13,850.- daily including overtime***

*for upto 70 days, USD 14,150 daily including overtime from 71ˢᵗ day on wards payable every 15days in advance within 3 banking days after vessel's delivery.*

52 ........~~United States Currency per ton on Vessel's total deadweight carrying capacity, including bunkers and~~

53 ~~stores, on........summer freeboard, per Calendar Month~~, commencing on and from the day *any time* of her delivery,    a s aforesaid, and at

54 and after the same rate for any part of a *day* ~~month~~; hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary

55 wear and tear excepted, to the Owners (unless lost) ~~at...~~ *on dropping last outward sea pilot one safe port India/Japan range in Charterers option any time day or night, Sundays and holidays included......*

56 .......unless otherwise mutually agreed. Charterers are to give Owners not less than    *15/10/7/5 days approximate notice with intended redelivery port and 3/2/1 day(s)* .days *definite*

57 notice of vessels expected date of re-delivery, and probable port.

58    5. Payment of said hire   to be made in *as per Clause 78* ~~New York~~ in cash in United   States Currency, semi-monthly in advance, and for the last half month or

59 port of same   approximate amount of hire , and should   same not cover the actual time, hire is to be   paid for the balance day by day, as it becomes

60 due, if so required by Owners, unless bank   guarantee or deposit is made by the Charterers, otherwise        failing the punctual *upto expected redelivery time date* and regular payment of the

61 hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to

    withdraw the vessel from the service of the Charterers, *after serving minimum two banking days notice*

62 without prejudice   to any claim they   (the Owners) may otherwise   have on the Charterers.

    ~~time to count~~

62 ~~from 7 a.m. on the working day~~

63 ~~following that on which written notice of readiness has been given to Charterers or their Agents before        4 p.m., but if required by Charterers, they~~

64 ~~to have the privilege of using vessel at once, such time used to count as hire.~~

65    Cash for vessel's   ordinary   disbursements   at any port may be   advanced as required   by the Captain, *and/or Owners* by the Charterers or their Agents, subject

66 to 2 1/2% commission and such advances shall be deducted   from the hire. The Charterers, however, shall

66 in no way be responsible for the application

67 of such advances.

68    6. That the cargo or cargoes be laden and/or   discharged in any *safe* dock   or at any    *safe* wharf or

    *safe* place in part or elsewhere that Charterers or their Agents may

69 ~~direct, provided the vessel can safely lie always afloat   at any time of tide, except at   such places where it is customary for~~

    ~~similar size vessels to safely~~

70 ~~lie aground~~

71    7. That the whole reach   of the Vessel's Hold,   Decks, and usual places   of loading (not more than   she can reasonably

71 stow and carry), also

72 accommodations for   Supercargo, if carried, shall   be at the Charterers' disposal, reserving only proper

72 and sufficient space for Ship's officers, crew,

73 tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the   privilege of passengers as        73 far as accommodations~~ ~~allow, Charterers~~

74 ~~paying Owners......per day per passenger for accommodations   and meals. However, it is agreed that in case        74 any fines or extra~~

~~expenses are~~

75 ~~incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.~~

76    8. That the Captain shall prosecute his    voyages with the utmost despatch, and shall render all cus-

76 tomary assistance with ship's crew and

77 boats. The Captain (although appointed    by the Owners), shall be under the orders and directions of the

77 Charterers as regards *vessel's* employment and

78 agency; and Charterers are    to load, stow, ~~and~~ trim, *secure/tally and discharging and lash/unlash and dunnage* the cargo at

    their expense    under the supervision of the Captain, who is to sign Bills of Lading for

79 cargo as presented, in strict conformity with Mate's ~~or Tally Clerk's~~    receipts.

80    9. That if the Charterers    shall    have    reason to be    dissatisfied with    the conduct of    the Captain,

80 Officers, or Engineers, the Owners shall on

81 receiving particulars of the complaint,    investigate the same, and, if necessary, make a change in the        81 appointments.

82    10. That the Charterers shall have permission to appoint a Supercargo only, who shall accompany the vessel *at his own risk and*

*standard L.O.I. to be signed and loaded with Master on his boarding provided accommodation able and life boat*

*capacity permits* and see that    voyages are    prosecuted

83 with the utmost despatch. He is to be furnished    with free *and suitable* accommodation if available, and same fare as provided for

    Captain's table, Charterers paying at the

84 rate of $1.00 *USD10.00* per day. Owners to victual Pilots and Customs Officers, and also, when authorized    by Charterers or their Agents,

to victual Tally

85 Clerks, Stevedore's    Foreman, etc.,    Charterers paying *Owners USD1,200 per month or pro rata basis 30 days*

*cables/victualling/entertainment* ~~at the    current rate    per meal, for all such victualling.~~ *(See Clause 107)*

86    11. That the Charterers    shall furnish the Captain    from time to time with all    requisite instructions

86 and sailing directions, in writing, and the

87 Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Char-

87 terers or their Agents, and furnish the Chartearers,

88 their Agents or Supercargo, when required, with *legible deck and engine* a true copy of daily Logs, *in English language,*

showing the course of the vessel and distance run and the

89 consumption of fuel.

90    12. That the Captain shall use diligence in caring for the ventilation of the cargo as applicable per vessel's description.

91    13. ~~That the Charterers shall have the option of continuing this charter for a further period of.......~~

92 ......................................... ...............................................................................................................

93 ~~on giving written notice thereof to the Owners or their Agents............days previous to the expiration of~~

93 ~~the first-named term, or any declared option.~~

94    14. That if required by Charterers, time not to commence before *0001 hours 04th April 2007* and should

95    vessel not have *been delivered* ~~given written notice of readiness on or before 2400 hours 10th April 2007, but not later than~~

    ~~4 p.m.~~ Charterers or their Agents to have the option of cancelling this Charter *within 2 working days after receiving Owners*

    *official notice for laycan extension. In the event of vessel missing laycan, the extended laycan IF ACCEPTABLE*

    *BY CHARTERERS to be mutually agreed between Owners and Charterers* ~~at any time not later than~~

96    ~~the day of vessel's readiness.~~ *Owners/Master to advise definite 5/3/2/1 days notice on delivery to Charterers. Time on*

    *delivery/redelivery to be based on GMT, but laycan to be based on local time.*

97    15. That in the event of the loss of time from *and/or default of Owners and/or strike or sabotage by Officers/crew of*

    *deficiency of ship's* ~~of men~~ stores, fire, breakdown or damages to hull, machinery or equipment,

98 grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or

98 painting bottom, or by any other cause or restrictions **whatsoever for which Owners are found liable under terms of this Charter Party and unless caused by Charterers**

99 preventing the full working of the vessel, the payment of hire shall cease for the **actual** time thereby lost, until the vessel has regained the same or equivalent position and if upon the   voyage the speed be reduced by

100 defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost     100 of any extra **direct related** fuel consumed in consequence

101 thereof, and all **direct related** extra  expenses shall be  deducted from  the hire.**(See Clause 52)**

102    16. That should the vessel be lost, money paid in advance and not earned (reckoning from the date of    102 loss or being last heard of) shall be

103 returned to the Charterers at once. The act of  God, enemies, fire, restraint of Princes, Rulers and      103 People, and all dangers and accidents of the Seas,

104 Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party,

104 always mutually excepted.

105   The vessel shall have the liberty to sail with or without pilots, to tow and   to be towed, to assist

105 vessels in distress, and to deviate for the

106 purpose of saving life and property.

107    17. ~~That should any dispute arise between Owners and the Charterers, the matter in dispute shall be~~      107 ~~referred to~~ **arbitration in Hong Kong. English Law to apply and award given by the arbitrators shall be and binding o the both parties. The arbitrators shall be shipping men conversant with shipping matters. Owners understanding is that such party to appoint one person and the 3rd to be appointed by the two so chosen,** ~~three persons in New York,~~ **LMAA for claims not exceeding the amount of USD50,000**

108 ~~one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision~~      108 ~~or that of any two of them, shall be final, and for~~

109 ~~the purpose of enforcing any award, this agreement  may be made a rule of the Court. The Arbitrators~~      109 ~~shall be commercial men.~~

110    18. That the Owners shall have a lien upon all ·  cargoes, and all sub-freights/**sub-hires** for any amounts due under this Charter, including General Average

111 contributions, and the   Charterers to have a lien on the  Ship for all monies paid   in advance and not   111 earned, and any overpaid hire or excess

112 deposit to be returned at once. Charterers will not   suffer, nor permit to be continued, any lien or      112 encumbrance incurred by them or their agents, which

113 might have priority over the title and interest of the owners in the vessel.

114    19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting

114 Owners' and Charterers' expenses and

115 Crew's proportion. General Average shall be   adjusted, stated **In Hong Kong according to York-Antwerp Rules of 1994 or any amendments thereto** ~~and settled, according to Rules 1 to 15,~~     115 ~~inclusive, 17 to 22, inclusive, and Rule F of~~

116 ~~York-Antwerp Rules 1924, at such port or place  in the United States as may be selected by the carrier,~~ and 116 as to matters not provided for by these

117 Rules, according to the laws and usages at the port of **Hong Kong** ~~New York. In such adjustment disbursements in foreign currencies shall be exchanged into~~

118 ~~United States  money at the  rate prevailing  on the dates made  and allowances  for damage  to cargo~~

118 ~~claimed in foreign currency shall be converted at~~

119 ~~the rate prevailing on the last day of discharge  at the port or place of final discharge of such~~      119 ~~damaged cargo from the~~

~~ship. Average agreement or~~

120 ~~bond and such additional security, as may be required by the carrier, must be furnished before delivery~~    120 ~~of the goods. Such cash~~ ~~deposit as the carrier~~

121 ~~or his agents may deem sufficient as additional security for the contribution of the goods and for any~~    121 ~~salvage and special~~ ~~charges thereon, shall, if~~

122 ~~required, be made by the goods, shippers, consignees or   owners of the goods to the carrier before~~    122 ~~delivery. Such deposit~~ ~~shall, at the option of the~~

123 ~~carrier, be payable in United States money and be   remitted to the adjuster. When so remitted the~~    1 23 ~~deposit shall be held~~ ~~in a special account at the~~

124 ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds~~    124 ~~or credit balances, if~~ ~~any, shall be paid in~~

125 ~~United States money.~~

126    ~~In the event of accident, danger, damage, or disaster,   before or after commencement of the voyage~~    126 ~~resulting from any~~ ~~cause whatsoever,~~

127 ~~whether due to negligence or not, for which, or for the consequence   of which, the carrier is not~~    127 ~~responsible, by statute,~~ ~~contract, or otherwise, the~~

128 ~~goods, the shipper and the consignee, jointly and severally,   shall contribute with the carrier in~~    128 ~~general average to the~~ ~~payment of any sacrifices,~~

129 ~~losses, or expenses of a general average nature that   may be made or incurred,   and shall pay salvage~~    129 ~~and special charges~~ ~~incurred in respect of the~~

130 ~~goods. If a salving ship is owned or operated by the carrier, salvage shall   be paid for as fully and~~    130 ~~in the same manner as if~~ ~~such salving ship or~~

131 ~~ships belonged to strangers.~~

132  Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder. *It is understood that the* *Charter hire is not to be contributed to General Average.*

133    20. Fuel used by the vessel while   off hire, ~~also for cooking,   condensing water, or for grates and~~    133 ~~stoves to be agreed to~~ as to quantity, and the

134 cost of replacing same, to be allowed by Owners.

135    21. ~~That as the vessel may be from time to time employed in tropical waters during the term of this~~    135 ~~Charter, Vessel is to~~ ~~be docked at a~~

136 ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least~~    136 ~~once in every six~~ ~~months, reckoning from~~

137 ~~time of last painting, and payment of the hire to   be suspended until she is again in proper state for~~    137 ~~the service.~~

138 *No drydocking during this Charter period except in case of emergency of if/when mutually agreed between and* *Charterers.*

139 ............................................................................................................................................................

140    22. Owners shall maintain the gear of the ship   as fitted, providing gear *maximum in accordance with description Clause* (for all *cranes and power* ~~derricks~~)

140 ~~capable of handling lifts up to three tons,~~ also

141 providing ropes,   falls,  slings  and blocks *as on board*.  If vessel is  fitted with *cranes* ~~derricks~~  capable of  handling 141 heavier lifts, Owners are to provide necessary gear for

142 same, otherwise equipment and gear for heavier lifts shall   be for Charterers' account. Owners also to    142 provide ~~on the vessel~~ *as on board sufficient light for night work free of expense to Charterers* ~~lanterns and oil~~ 143 ~~for night work, and   vessel to~~

give use of  electric light when so fitted, but any  additional lights over

143 those on board to be at Charterers' expense. The   .

144 Charterers to have the use of any gear on board the vessel.

145    23. Vessel to work night and day, if required by Charterers, and all winches to be at  Charterers' disposal during loading and discharging;

146 steamer to   provide one   winchman per   hatch to work   winches day and   night, as   required, Charterers

146 agreeing to pay officers, engineers, winchmen,

147 deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles.    147 If the rules of the

148 port, or labor unions, prevent crew from driving winches, shore Winchmen to be *employed and* paid by Charterers. In the event of a       148 disabled winch or winches, or

149 insufficient power to   operate winches,   Owners to pay for shore *appliances* engine,   or engines, in lieu thereof, if required, and pay any loss of time occasioned *(See Clause 51)*

150 thereby.

151    24. It is also mutually agreed that this Charter is   subject to all the terms and provisions of        151 and all the exemptions from liability contained

152 in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act 152 relating to Navigation of Vessel";

153 etc.," in respect of all cargo shipped under this charter to or from the United States of America. It    153 is further subject to the following clauses, both

154 of which are to be included in all bills of lading issued hereunder:

155                    U.S.A. Clause Paramount

156 This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act     156   of the United States, approved April

157 16, 1936, which   shall be deemed   to be incorporated   herein, and nothing   herein contained shall be

157 deemed a surrender by the carrier of

158 any of its rights or   immunities or an increase   of any of its responsibilities or liabilities under

158 said Act. If any term of this bill of lading

159 be repugnant to said Act to any extent, such term shall be void to that extent, but no further.

160                    Both to Blame Collision Clause

161 If the ship comes into   collision with another   ship as a result of   the negligence of the other ship

161 and any act, neglect or default of the

162 Master, mariner, pilot or   the servants of the Carrier in the navigation or in the management of the

162 ship, the owners of the goods carried

163 hereunder will indemnify the Carrier against all loss or liability to the other of non-carrying ship

163 or her owners in so far as such loss

164 or liability represents loss of,   or damage to, or any claim whatsoever of the owners of said goods,

164 paid or payable by the other or non-carrying

165 ship or her   owners to the owners of said   goods and set off, recouped or recovered by the other or

165 non-carrying ship or her

166 owners as part of their claim against the carrying ship or carrier.

167    25. The vessel shall not be required to *force ice nor follow ice breaker nor* enter any ice-bound port, or any port where lights or light-ships have been or are about to be withdrawn

168 by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be       168 able on account of ice to safely enter the

169 port or to get out after having completed loading or discharging. *In any case vessel never to force nor push ice nor to follow Icebreaker.*

170    26. Nothing herein stated is to be   construed as a demise of the vessel to the Time Charterers. The

170 owners to remain responsible for the

171 navigation of the vessel, *acts of pilots and tugboats*, insurance, crew, and all other matters, same as when trading for their own account

172    27. A commission of *1.25 2½* per cent is payable by the Vessel and Owners to *Merit Maritime FZE. Dubai.*

173    ..................................................................................................................................................

174 on hire earned   and paid under   this Charter, and also   upon any   continuation or   extension of this

174 Charter.

175    28. An address commission of *2.5 2½* per cent payable to............*the Charterers*..............on the hire earned and    175 paid under this Charter.


*Additional Clauses 29-124, as attached, are to be fully incorporated in this Charter Party.*


**CHARTERERS**                                    **OWNERS**




----------------------------------------------------           -------------------------------------------------------

**USL FZE, DUBAI**                          *JINYANG SHIPPING CO., LTD.*



This Charter Party is a computer generated copy of the NYPE(Revised 3rd October, 1946) from printed under licence from the Association of Ship Brokers & Agents(U.S.A), Inc., using software which is the copyright of Software Limited.

It is a precise copy of the original document which can be modifies, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

**Clause 29. SUPERFICIAL, INSPECTION**

Charterers have the option of holding a superficial inspection any time of this charter at their times and expenses Owners and Master giving facility and assistance to carry this out.

**Clause 30. BUNKERS PRICE & QUANTITY**

Vessel is to be delivered with the bunker quantity as on board about 650MTS IFO180CST and about 67MTS MGO. Vessel is to be redelivered with about same quantity as on delivery. Bunker price to be USD 330 PMT for IFO and USD 600 for MGO.

CHARTS WILL PAY VALUE OF 400MT IFO AND MGO AS ON BOARD ON DELY ALONG WITH 1ST C.HIRE SAME TO BE DEDUCTED FROM THE LAST SUFFICIENT HIRE.

**Clause 31. IN LIEU OF HOLD CLEANING**

Charterers option to redeliver the vessel unclean against paying USD3,250 lumpsum in lieu of hold cleaning including removal/disposal of all dunnage/lashing material/debris and intermediate hatch operation by crews.

Charterers to pay Intermediate hold cleaning fee, USD2,500 lumpsum. Owners are not responsible in case vessel fails to pass hold inspection.

**Clause 32. ON/OFF HIRE SURVEY**

Full on/off-hire bunker survey to be carried out by an independent surveyor at delivery port or at first load port and last discharge port. Cost and time for both on/off-hire survey to be shared equally between Owners and Charterers. No time to be deducted from hire, if survey does not prevent operation of vessel.

**Clause 33. STEVEDOERE DAMAGE**

Notwithstanding anything to the contrary in this Charter Party or by operation of the law, Charterers to remain responsible for stevedore damage as stated hereunder:

Stevedores to be appointed and paid for by the Charterers but to work under the supervision of the Master. Should any damage be caused by the stevedores to the vessel or her fittings, then the Master has to let the stevedores try and repair the damage and will try and settle the matter directly with them in the first instance. If the damage cannot be repaired by the stevedores, then the Master must endeavour to obtain written acknowledgement of the damage and liability from the stevedores. Master has to notify the Charterers or their agents in writing of such damage within 24 hours after such damage occurs or in the case of hidden damage as soon as is discovered but in any case no later than the time of redelivery.

The Charterers have the privilege of redelivering the vessel without repairing the stevedores' damage for which the Charterers are responsible, incurred during the currency of this Charter as long as the damage does not affect the seaworthiness of the vessel, class, tradingworthiness. But the Charterers undertake to reimburse the cost of repairs against the production of repair bills by a dockyard, which is however to be in conformity with the

1

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

off-hire surveyor's report with respect to the extend of such damage and the bill/cost not to be unreasonable unless otherwise agreed and Owners endeavour to minimize the repairing cost.

In case the stevedores' damage affects the vessel's seaworthiness, class, tradingworthiness, then such damage to be repaired prior to sailing the port of occurrence at Charterers' time, risk and expense to class surveyor's satisfaction.

### Clause 34. CARGO GEAR & EQUIPMENT
Vessel's cargo gear, all other equipment to comply with the regulations and/or requirement in effect at port of call and canals and the vessel is at all times in possession of valid up-to-date certificates onboard necessary to comply with such regulations and/or requirement.

### Clause 35. BOYCOTT
Should the vessel be boycotted, picketed, blacklisted or similar incident at any port or place by shore and/or port labours and/or tug boats and/or pilots, or by the government and/or any authority by reason of the terms and conditions of which members of the officer/crew were employed, vessel has PNO-TCC(Panhelenic Seamans Federation) accepted by ITF or by reason of other vessels under the same ownership, management, operation or control, or by reason of vessel's fitting and/or her other equipment, all directly related expenses for the vessel but not included any opportunity loss incurred by the Charterers, and any direct expenses incurred therefrom to be for Owners' account and Charterers are entitled to put the vessel off-hire for any time lost by such reason.

### Clause 36. ELIGIBILITY FOR BUNKERING
Owners confirm that vessel is eligible for bunkers within the agree trading area, its territories and possessions in accordance with governing export control regulation also Owners confirm that vessel is eligible for bunkers in any other countries, if required.

### Clause 37. OIL SPILLAGE
With regard to oil pollution Owners guarantee a valid certificate of financial responsibility in compliance with requirements of at port of call.

### Clause 38.
Owners confirm that the vessel is grain fitted/self-trimming for full and complete homogeneous cargo. Otherwise, grain loading to be done as per vessel's grain manual.

### Clause 39. CUBA/ISRAEL. BLACK LIST
To the best of their knowledge. Owners confirm that this vessel has not traded Israel and is not blacklisted by the boycott league in darnascus.

### Clause 40. DERATTING CERTIFICATE

2

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

The vessel to be delivered with valid deratisation or deratisation exemption certificate on board and if this does not cover the whole period of this charter and renewal of certificate and sanitary inspection certificate or fumigation is necessary.

### Clause 41. QUARANTINE

Normal quarantine time and expenses to enter the port to be for Charterers account. But any time of detention and expenses for quarantine due to pestilence illness, etc, of Master, officers and crew to be for Owners account, unless caused by ports called or cargoes carried under this Charter Party.

### Clause 42. VACCINATION

Owners to arrange at their expenses that Master, officers and crew of the vessel hold valid vaccination certificates against yellow fever, smallpox, cholera or other necessary health certificates during this charter.

### Clause 43. STOWAGE COLLECTION OF DUNNAGE, ETC.

Owners and Master to undertake best efforts to co-operate with Charterers and Master to make best efforts to collect, restore and provide any useful dunnage, lashing etc, including preslings/wire sling, not broken for next use after completion of the voyage, during the currency of this charter, if requested to do so by Charterers.

### Clause 44. HATCH OPENING/CLOSING, ETC

Provided time and safety permit, before and upon arrival at a port, vessel's officers/crew to shape up vessel's hatches. Cranes and gangway in order to commence loading and/or discharging without delay. Opening/closing of all hatch covers may be done by officers/crew provided shore regulations permit.

### Clause 45. SMUGGLING

Any delay, expenses and/or fines incurred on account of smuggling to be for Charterers' account if caused by Charterers' supercargo their staff or Charterers' agent, or to be for Owners account if cause by officers and/or crew or Owners agents.

### Clause 46. GANGWAY WATCHMEN

Gangway watchmen if requested by Owners/Master to be for Owners account other cases including compulsory gangway watchmen to be Charterers account.

### Clause 47. OWNERS' AGENT

Owners to appoint to Owners' agents to attend all Owners matters such as general average, dry-docking, hospitalization, repatriation of crew, repair, supply of vessel's store and provisions, etc.
In case Owners are unable to arrange same, Charterers to agree to have their agents attend such matters with owners' paying actual expenses basis prevailing tariff. However Charterers' agents to attend to small matters such as delivery of crew mails without charging Owners any fee.

3

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

Notwithstanding the above Charterers' agents to assist with crew charges and Owners paying for the services at cost.

### Clause 48. OWNERS DISBURSEMENT

Charterers shall have the liberty to deduct USD500 per port from hire payment for Owners' account. Charterers' have the further liberty to deduct estimated value of bunkers on redelivery and estimated amount of disbursements for Owners account. Charterers to present original vouchers within 3 months after redelivery, otherwise any reservation for Owners expenses to be refunded to Owners account & Owners guarantee to settle/pay cost presentation of vouchers.

### Clause 49. DEVIATION PUT BACK

In the event of loss of time either in port or at sea deviation from the course of the voyage or putting back whilst on voyage, caused by sickness of or an accident to or misconduct by Master officers/crew, or caused by stoway refugee or any person on board vessel other than persons travelling by request of Charterers or by reason of the refusal of Master or officer(s) or crew to perform their duties or of an accident or breakdown to the vessel or drydocking or periodical survey, the hire shall be suspended from the time of inefficiency in port or at sea. Deviation or putting back until vessel is again efficient in the same position or regains the line of voyage whichever shorter distance for a port where the vessel is originally destined for and voyage resumed therefrom all expenses incurred, including bunkers consumed during such period of suspension shall be for Owners' account.
It is expressly agreed that if the vessel resumes her voyage from a point closer to her original destination then any time and bunkers saved shall be credited to the Owners.

### Clause 50. SAVING LIFE REFUGEE

Owners shall have the liberty to deviate for the purpose of saving life at sea and landing the person saved. But in case found the person is refugee, any time hereby lost and extra expenses to be shared equally with parties involved in this Charter chain.

### Clause 51. WINCH BREAKDOWN

In the event of breakdown of winch or winches by reason of disablement or insufficient power, the hire to be reduced pro rata for the period of such inefficiency in relation to the number of winch(es) available. Owners to pay in addition the cost of labour including stevedores stand-by cost either idle or additionally engaged, because of the breakdown. But only for the gang the breakdown incurred, and max up to 1 shift only.

This does not exempt Owners from liability for the cost of hireing shore appliances. If required by Charterers, in accordance with clause 23. If shore appliances are hired by Owners, the hire of the vessel to be paid in full deducting actual time lost by breakdown. Charterers to discuss with Owners the cost of any shore gear prior

4

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

Charterers hiring same. If there is any time delay for Owners confirmation due to Owners delayed order to hiring shore crane will be on their account.

Should the final completion of the load/discharge be delayed when cargo is to be completed or remaining in only one hold due to breakdown of winch or winches at those hatches and if the deficiency is not rectified within three hours of occurrence, and then the entire vessel to be off- hired. However, if the Owners at their option to provide a shore crane at their cost, then the time to count in full and vessel shall remain on hire.

### Clause 52. SEIZURE DETENTION ARREST

Should the vessel be seized or detained or arrested or delayed by any authority during the currency of this Charter period, all time lost by this reason shall be treated off-hire until the time off her release unless such seizure or detention or arrest or delay is occasioned by any act or omission or default of Charterers or their agents, any extra expenses incurred by and/ or during above seizure or detention or arrest or delay to be for Owners' account, unless caused by Charterers as above.

### Clause 53. REQUISITION

Should the vessel be requisitioned by the government of the vessel's flag during the currency of this Charter, she shall be off-hire during the period of such requisition and any hire or other compensation paid by any government or governmental authority in respect of such requisition shall be for Owners' account. However, Charterers have the option of cancelling the balance period of this Charter.

### Clause 54. MAJOR WAR

If major war breaks out between any two or more of the following countries and provided same has a direct bearing on the non-fulfillment of this Charter Party :

United Kingdom, U.S.A., Russia, People's Republic of China, Japan, Taiwan and flag of the vessel directly affecting the performances of this charter both Owners and Charterers shall have the option of cancelling this charter whereupon Charterers shall redeliver the vessel to Owners, if she has cargo on board, after discharging thereof at destination, or if debarred from reaching or entering it, at a near open and safe port as directed by Charterers, or if she has no cargo on board, at a port at which she stays or if at sea at a near and safe port as directed by Charterers. In all cases hire shall be paid until vessel's redelivery.

### Clause 55. WAR RISK INSURANCE AND CREW WAR BONUS

Basic annual war risk insurance on vessel and/or crew to be for Owners' account. Any extra/additional war risk insurance premium on vessel and/or crew and/or closure/blocking/trapping insurance charged by Owners Underwriters in respect of calling the breach areas under this Charter Party to be for Charterers' account and to be refunded to Owners by Charterers upon receipt of the Owners underwriters/brokers copy of original invoice/debit note.

5

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

Such additional/extra war risk insurance not to exceed that obtainable from first class insurers at Lloyds' of London on same terms and conditions as Owners cover.

### Clause 56. BILL(S) OF LADING SIGN
Charterers and/or their agent have option to sign Bill of Lading on behalf of Master in accordance with Mate's receipts without prejudice to this Charter Party.

### Clause 57. CLAUSE PARAMOUNTS
New Jason Clause, New Both-to-Blame Collision Clause, and the Hague 1921 rules and Legislation's, Conwartime 1993 War Risk Clause, Chamber of Shipping Nuclear Clause, Clause Paramount, U.S.A., Clause Paramount, whenever applicable shall be deemed to be incorporated in this Charter Party and Bills of Lading issued hereunder.

### Clause 58. NYPE INTERCLUB AGREEMENT
Liabilities for cargo claims, including customs fines if imposed shall be borne by Owners/Charterers in accordance with the interclub New York produce exchange agreement of 1996 and any amendment thereto. The party having paid the claim shall submit to the other party supporting documents as soon as possible.

### Clause 59. OWNERS P AND I CLUB
Owners confirm the vessel is fully covered for the duration of Charterers employment by "The Japan Ship Owners's Mutual Protection & Indemnity Association".

### Clause 60.
In case Charterers load steel slabs, no vertical/block stowage allowed.

### Clause 61.
OWNERS TO ENSURE THE WEATHER TIGHTNESS OF ALL HATCH COVERS AND CLOSURES. IF THE WEATHER TIGHTNESS OF ANY HATCH OR CLOSURE APPEARS TO BE DEFFICENT, OWNERS SHALL PROMPTLY TAKE ALL MEASURES TO REINSTATE AND REPAIR THE SAME AND/OR TAKE OTHER MEASURES TO ENSURE THAT HATCHES ARE WEATHER TIGHT THEREBY ENSURING THT LOADED CARGO IS KEPT AND MAINTAINED IN THE PRESCRIBED MANNER AND THESE MEASURES SHALL BE DONE AT OWNER'S TIME AND EXPENSE AND FOR OWNER'S ACCOUNT.

### Clause 62. - Deleted

### Clause 63. VESSEL'S DESCRIPTION
M/V HUYUTEC
EX M/V PANTELIS P

6

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

SDBC BUILT 1981 HKG FLG

26,354 MT DWAT ON 9.964M

LOA/BEAM 175.19M/25.45M

GRT/NRT 16,079/9,951

5 H/H  G/B 1,176,963 /1,112,098 CUBIC FEET

G/B B/DOWN ASF:

|  | GRAIN | BALE |
|---|---|---|
| HO 1: | 139,817 | 128,928 |
| HO 2: | 277,823 | 264,926 |
| HO 3: | 201,816 | 186,174 |
| HO 4: | 286,440 | 271,601 |
| HO 5: | 271,067 | 260,469 |

SIZE OF HATCHES   1: 10,25 M X 12,19 M

2: 19,20 M X 12,19 M

3: 10,97 M X 12,19 M

4,5: 19,20 M X 12,19 M

4 X 15 TS CR

TPI ABT. 93

CONSTANT :ABT 250MT

UNPUMPABLE BALLAST WATER :ABT 200-250MT

ABT 12.5  KN ON ABT 24 MT  IFO 180 CST + MGO AT SEA ABT 2.1 MT

IN PORT CONSUMPTION IDLE ABT 2.0 MT MGO IN PORT CONSUMPTION WORKING ABT 3.5 MGO

SPEED CONSUMPTION UNDER GOOD WEATHER LADEN CONDITION.

AT SEA UNDER GD WEATHER CONDITIONS UPTO AND NOT INCL BEAUFORT SCL 4 OR DOUGLAS SEA STATE 3 VSL CONSUMES MGO FOR M/E IN CONFINED/NARROW WATERS CHANNELS,

RIVERS, SHALLOW WATERS,CANALS, WHEN SAILING IN BAD WEATHER /ROUGH SEA OR IF BELOW 10 KNOTS SPEED, ENTERING/LEAVING PORTS AND IN GENERAL RESTRICTED TO NAVIGATION/MANOUVERING AREA WITH OR WITHOUT PILOTS TO MASTERS DISCRETION

OWNERS DO NOT ALLOW ALTERNATE HOLD LOADING, UNLESS IT IS AGREED BY THEM ON CASE-BY-CASE BASIS SUBJ TO CARGOES CARRIED/STW FACTORS.STRESSES/ PTS OF CALL ETC.

TANK TOP AND HOLD DIMENSIONS EXCLUDING CORRUGATIONS ALL FIGURES/DETAILS ABOUT WOG

CALL SIGN:P3PW7 ,  INMARSAT C TLX NO. 447721410

OWRS PNI CLUB NAME : WOE

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

H+M VALUE : USD5.3 MIO

CLASS : LR

### Clause 64. DELAY DUE TO OWNERSHIP

In the event that the vessel is delayed or rendered inoperative by strikes labour stoppage or any other difficulties due to ownership, lack of health certificates of officers/crew such time lost to be considered as off-hire.

### Clause 65. RETURN INSURANCE

Charterers to have the benefit or any return insurance premium receivable by Owners from their underwriters, As and when received from the underwriters, by reason of the vessel being in port for a minimum period of 30 days, provided the vessel is on hire during the same period.

### Clause 66. - Deleted

### Clause 67. - Deleted

### Clause 68.

Owners guarantee that vessel's holds are to be clear of any fittings/superstructures such as car deck curtain plates, container fitting whatsoever.

### Clause 69.

BIMCO ISM/SPS Clause to be applied.

### Clause 70. OWNERS' FULL STYLE

OWNERS : HUYUTEC MARITIME LIMITED

SUITE 504, SOUTHER TOWER,

WORLD FINANCE CENTRE, HARBOUR CITY,

17-19 CANTON ROAD, TSIMSHATSUI, KOWLOON, HONGKONG / HONGKONG

Disponent Owners: GUDAMI INTERNATIONAL PTE LTD

Person in charge: MS BEE CHOO

Tel/Fax/Tlx: Tel : (65) 6225 2537  Fax: (65) 9730 0092

Full style/domicile: GUDAMI INTERNATIONAL PTE LTD

3 SHENTON WAY # 19-08 SHENTON HOUSE, SINGAPORE 068805

D/OWRS : JINYANG SHIPPING CO.,LTD.

Tel : 82-2-7351500 (Rep.)  Fax : 82-2-7355400

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

Web site http://www.jinyangshipping.com

DD.: 12th Fl., Seorin BLDG., #88, Seorindong, Chongroku, Seoul, Korea

**Clause 71.** - Deleted

**Clause 72. CONSECUTIVE OFF-HIRE**

If the vessel is placed off-hire for more than 15 consecutive days other than for dry-docking purpose. Charterers have the right to cancel the balance period of this charter upon completion of the concerned voyage provided on cargo on board.

**Clause 73. BIMCO DOUCLE BANKING CLAUSE**

(a) The Charterers shall have the right, where and when it is customary and safe for vessels of similar size and type to do so, to order the vessel to do, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessels to come and remain alongside at such safe dock, wharf, anchorage or other place for transhipment, loading or discharging of cargo and/or bunkering.

(b) The Charterers shall pay for and provide such assistance and equipment as may be required to enable any of the operations mentioned in this clause safely to be completed and shall give the Owners such advance notice as they reasonably can of the details of any such operations.

(c) Without prejudice to the generality of the Charterers' rights under (a) and (b), if is expressly agreed that the Master shall have the right to refuse to allow the vessel to perform as provided in (a) and (b) if in his reasonable opinion it is not safe so to do.

(d) The Owners shall be entitled to insure any deductible under the vessel's hull policy and the Charterers shall reimburse the Owners any additional premium(s) required by the vessel's Underwriters and/or the cost of insuring any deductible under the vessel's hull policy.

(e) The Charterers shall further indemnify the Owners for any costs, damage and liabilities resulting from such operation. The vessel shall remain on hire for any time lost including periods for repairs as a result of such operation.

**Clause 74.** - Deleted

**Clause 75. REPLENISHMENT OF BUNKER BEFORE DELIVERY AND REDELIVERY**

Charterers to be allowed to replenish bunkers before delivery and Owners to be allowed to replenish bunkers before redelivery provided such bunkering does not interfere each parties cargo operations if Owners arrange any bunker supply along with the chraters then port expenses for bunker supply only and agency fee for bunker supply only will be shared equally.

9

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

**Clause 76.**

Hire not to contribute general average and this Charter Party shall be governed by and construed in accordance with English law.

**Clause 77.**

Charterers have option to weld padeyes on deck/hatch cover/ in hold at Charterers' time/expenses and same to be removed prior to redelivery otherwise Charterers have option to redelivery vessel without removing padeyes paying USD10.00 per each padeye.

It is agreed that all such padeyes are not to be welded over bunker tanks.

**Clause 78.**
**Owners Bank Account Details:**
　　HANA BANK SOGONG DONG BRANCH
　　A/C No. : 195-910001-30632 (USD)
　　SWIFT CODE : HNBNKRSE
　　IN FAVOUR OF JIN YANG SHIPPING CO.,LTD.

**Clause 79.**

Hire payable every 15 days in advance against Owners invoice by fax or by e-mail except 1st hire which payable together with bunkers on delivery as per on-hire survey within 3 banking days after delivery

**Clause 80. HOLD CONDITION CLAUSE**

VESSEL UPON DELY OR ARVL AT 1ST LOAD PORT TO HAVE HOLDS CLEAN/FRESH WATER WASHED AND DRIED ALSO FREE OF LOOSE RUST/ RESIDUES OF PREVIOUS CGO AND READY TO RECEIVE ABV CGO TO INDEPENDENT SURVEYOUR'S SATISFACTION. IF VSL'S FAILS IN HOLDS SURVEY AS CONDUCTED BY ABOVE CONCERNED SURVEYOR, THEN VESSEL TO GO FULLY OFF-HIRE FROM TIME OF HOLD FAILURE UNTIL THE TIME ALL HOLDS ARE PASSED FOR LOADING AND BUNKER CONSUMPTION DURING OFF-HIRE PERIOD TO BE OWNERS ACCOUNT ALSO ANY DIRECT EXPENSES INCURRED TO BE FOR OWNER'S ACCOUNT.

**Clause 81. LETTER OF INDEMNITY CLAUSE**

CHTRS WILL MAKE EVERY ENDEAVOUR TO ENSURE THAT ORIGINAL BILL OF LADING IS AVAILABLE AT DISPORT ON OR BEFORE VESSELS ARRIVAL TO DISCHARGE. HOWEVER IF ORIGINAL BILL OF LADING IS NOT AVAILABLE OR CHANGE OF DESTINATION OR PART CARGO TO DISCHARGE THEN OWNERS/MASTER TO PERMIT DISCHARGE OF CARGO WITHOUT DELAY AGAINST CHTRS LOI BASED ON OWNERS PANDI CLUB STANDARD WORDING BUT SIGNED BY CHTRS ONLY. ORIGINAL BILL OF LADING TO BE FORWARDED TO OWNERS AS SOON AS IT BECOMES AVAILABLE.

10

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

**Clause 82** – Deleted

**Clause 83. GRAIN FITTING**
Vessel shall be in all respect fitted for grain loading and has necessary certificate for grain loading in accordance with the requirements of 'SOLAS'.

**Clause 84. ARBITRATION**
Arbitration to be held in Hong Kong and English law to apply.

**Clause 85. DELIVERY/REDELIVERY**
For the purpose of computing hire payments, time for delivery/redelivery shall be adjusted to G.M.T.

**Clause 86**. – Deleted

**Clause 87**. TRADING EXCLUSIONS
TRADING WITHIN PRC/S.KOR/PG RANGE INCLUDING CIS-RUSSIAN PACIFIC BUT NOT NORTH OF NAKHODKA. FOR INDONESIA TRADING – ONLY SUMATERA, JAWA AND KALIMANTAN AND SULAWESI, BRINGKASI, UJUNG PANDANG PORTS TO BE ALLOWED. TRADING ALWAYS BETWEEN SAFE ANCHORAGE(S), SAFE BERTH(S), SAFE PORT(S) AND PLACES, ALWAYS SAFELY AFLOAT AT ANY TIME OF TIDE, ALWAYS ACCESSIBLE, ALWAYS WITHIN I.W.L., ICE FREE PORTS, VESSEL NEITHER TO FORCE ICE NOR TO FOLLOW ICE BREAKERS, ALWAYS WITHIN WAR RISK TRADING WARRANTIES AND EXCLUDING WAR AND WARLIKE ZONES WHICH DECLARED BY OWNERS' WAR RISK UNDERWRITERS FROM TIME TO TIME AND COUNTRIES WHICH TIME TO TIME MAY BE EXCLUDED BY GOVERNING AUTHORITY OF THE VESSEL'S FLAG, AND EXCLUDING FORMER YUGOSLAVIA, FEDERAL REPUBLIC OF SERBIA AND MONTENEGRO, EITREA, ETHIOPIA, NORTH KOREA, ALBANIA, GREAT LAKES, NAMIBIA, IRAQ, CAMBODIA, ISRAEL OR ISRAEL CONTROLLED COUNTRIES/AREAS, LEBANON, ERITREA, SYRIA, ANGOLA (INCLUDING CARBINDA), SOMALIA, NIGERIA, DEMOCRATIC REPUBLIC OF FORMERLY ZAIRE, YEMEN (NORTH & SOUTH), SRI LANKA, LIBERIA (INCLUDING ABKHAZIA), BOSNIA-HERZEGOVINA, SIERRA LEONE, CUBA, LIBYA, SUDAN, FEDERAL REPUBLIC OF YUGOSLAVIA, CROATIAN PORTS, HAITI, SALVADORE, CYPRUS, GUATEMALA, KAMPUCHEA, AUSTRALIA, NEW ZEALAND, SEA OF AZOV AND U.S.A. AND/OR THEIR TERRITORIES. NO PASSING SUEZ CANAL.

NO DIRECT SAILING BETWEEN PRC AND TAIWAN AND IRAQ/KUWAIT AND NORTH KOREA/SOUTH KOREA OR VICE VERSA.

CHARTERERS NOT TO PLACE VESSEL AT PORTS SUBJECT TO UN SANCTIONS AND/OR INTERNATIONAL ORGANIZATION OF THE UN OR AREA PROHIBITED BY VESSEL'S WAR RISK

11

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

UNDERWRITER DUE TO WAR OR WAR-LIKE ACTIVITIES AND PLACES WHICH MAY BE EXCLUDED BY AUTHORITIES OF VESSEL'S FLAG, ADDITIONAL PREMIUM ALWAYS TO BE FOR CHARTERERS ACCOUNT.

IF THE WAR/WARLIKE ZONES HAS BEEN DECLARED BY VESSEL'S UNDERWRITERS AND/OR P AND I CLUB AFTER CARGO HAS ALREADY BEEN LOADED ON BOARD, SUBSEQUENTLY, THE WAR RISK CLAUSE OF CONWARTIME 1993 TO APPLY AND CHARTERERS ARE FULLY RESPONSIBLE TO PAY FOR ALL ADDITIONAL WAR RISK PREMIUM UPON DEMAND OF VESSEL'S UNDERWRITERS AND/OR P NAD I CLUB. IN SUCH CASE, OWNERS/MASTER HAVE THE OPTION LEAVING THE PORT IMMEDIATELY WITHOUT CONSENT. CHARTERERS AND OWNERS/MASTERS SHALL NOT BE HELD RESPONSIBLE FOR ANY/ALL CONSEQUENCES/LOSSES/EXPENSES RESULTED FROM THE ACTIONS TAKEN BY OWNERS/MASTER.

CHARTERERS HAVE OPTION TO CALL WAR OR WAR LIKE ZONES SUBJECT OWNERS PRIOR CONSENT WHICH CAN NOT WITHHELD UNREASONABLY. CHARTERERS WILL PAY ANY ADDITIONAL PREMIUM AND CREW BONUSE.

### Clause 88. CARGO EXCLUSIONS

Vessel can be employed in carry lawful merchandise cargoes but excluding all dangerous/hazardous/injurious/inflammable/explosive cargoes, goods, commodities as listed in the latest IMO D.G. code and or any subsequent modifications/amendments thereof, and always excluding cargoes restricted by as follows:

All unlawful cargoes, ammonium nitrate, ammunition, animals, any kinds of acids, any kinds of hides, MINERAL SANDS, ANY KIND OF RIVER AND SEA SAND OR ITS PRODUCTS, arms and war materials, asbestos, ashes & flyashes, asphalt and their products in bulk, prefabricated houses, organic peroxide, bitumen or any of it's products, black powder, blasting caps, bones, borax, calcium carbide, calcium chloride, calcium hypochloride, caustic soda, Chilean nitrate of soda, charcoal, container, copra and its products, copra pellets/products, granite blocks, cotton, creosoted goods, dangerous chemicals, detonators, direct reduced iron/ore and its products, dynamites, explosive of any kinds, ferro silicon inclu silicon manganese, fishmeal, fuels, harmful and corrosive fertilizer, hot briquetted iron (H.B.I.) and any cargoes embargoed by the U.N., Indian coal, Indian coke, isotope, livestock, loaded bombs, logs/mahogany, all kinds of concentrates, linseed oils, manioc and manioca pellets, mbt, meals, meat bone meal, metal

12

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

cuttings, mobile homes/building, motor vehicles, motor blocks and metal
tunings/shavings/borings, motor spirits, naphtha, nitrate sulphate, nuclear
cargo/waste/materials/substances or it's products, nuclear fuels, nuclear
isotopes, quebracho extracts radio isotopes, slurry, oil cakes, petroleum of
its products, coke, pitch, pond coal, radioactive materials/
waste/cargoes or it's products, rape seed expellers, niger seeds, palm
kernels, palm seeds, cotton, resin, rice/milled rice/paddy rice, salt of any
kind, saltpeter, shavings, sludge ore, soda ash, sponge iron(direct reduced
iron pellets), pencil pitch, cement, cars, coffee, cocoa, sugar, sulphur,
Quick lime or lime, Lumber, sodium sulphate in bulk, turpentine, yachts,
sunflower seed expellers and other expellers, wet salted hides/bieds/skins,
magnets,pig iron, toxic waste, scrap, tar and its products, chemical
products &/or its waste, TNT explosives, war materials, waste paper, wastes,
zinc & zinc ashes.

Ows not to be responsible for any contamination and/or damage to cargo
which may arise due to mix cargo loaded in same hold

All cargoes to be prepared/loaded/stowed/carried and discharged strictly in
accordance with IMO and local regulations and in accordance with vessel's
strength and stability and upto master's discretion. Any dunnage/mat and
lashing work n/or its cost to be arrged by chrs n for chrs a/c.
Charterers to issue certificate by competent authorities for carriage
stating the oil and moisture content and to provide mutually agreed
monitoring equipment for the voyage.

CHOPT TO LOAD INT CGO ON DECK/H COVER AT CHTRS TIME/EXPS/RISKS IN ACCORDANCE
WZ VSL'S STRENGTH AND STABILITY AT MASTER'S DISCRETION. CHTRS TO ISSUE LOI
OF SAME IN OWNERS PNI WORDINGS N FORMAT.

- ownrs iron ore loading Clause to apply;-
    iron ore to be allowed but loading to be either at mechanical berths using
    shore facilities or with net slings. IF GRABS USED WITH SHIPS CRANES FOR
    IRON ORE LOADING, GRABS CAP NOT TO EXCEED 4 CBM CAPACITY.

- PETCOKE LOADING CLAUSE TO APPLY

ONLY NON-CALCINED GREEN DELATE PETCOKE LOADING TO BE ALLOWED DURING THE CP

13

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

IF PETCOKE TO BE LOADED, HOLD CLEANING TO BE DONE BY SHORE LABOR WHO IS

ARRANGED BY CHTRS. Charterers are responsible to all cleaning / washing the holds

thoroughly upto master's satisfaction after discharging including but not

limited to supply of chemical / cleaning apparels / cleaning equipment /

fresh water for cleaning. All time / cost / expenses pertaining to the

cleaning holds to be for Charterers' account. HOWEVER, CHTRS WILL BE ABLE TO
DISCUSS

WITH MASTER/ CREW DIRECTLY TO DO THE JOB IF MASTER/ CREW AGREED."

PETCOKE LOADING NOT TO BE THE LAST CGO.

**Clause 89.**

Charterers are allowed to off-set estimated bunkers on redelivery from sufficient hire payments.

**Clause 90. –** Deleted

**Clause 91.**

Owners confirm that the vessel has on board the international tonnage certificate 1969 in full accordance with IMO requirements and the international convention of tonnage measurement of shipping 1969.

**Clause 92.**

Private confidential with no report from all parties involved in negotiation and eventual fixture.

**Clause 93. -** Deleted

**Clause 94. TAXES**

All tax(es), due and charge(s) on cargo and/or freight arising out of cargoes carried or port(s) visited under this Charter Party to be for Charterers' account.

**Clause 95. -** Deleted

**Clause 96**

No deductions to be made towards galley fuel including fuel used for air-conditioning – vessel has electric galley on board.

**Clause 97.**

Owners confirm vessel is not black-listed by any Arab league countries.

14

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

**Clause 98.**

Vessel has in its possession a current ITF certificate or equivalent acceptable within the agreed trading limits.

**Clause 99.**

a). OWNERS/ MASTER TO AUTHORISE CHTRS / SUB-CHTRS OR THEIR AGENTS TO SIGN BILLS OF LADING ON HIS BEHALF PROVIDED THE BILLS OF LADING ARE MADE UP IN ACCORDANCE WITH MATES RECEIPTS

b). IF SHIPPER/CHARTS REQUIRES SWITCH BILL OR 2ND SET BILLS OF LADING OR B/L MENTIONING THE TRADER NAME AS SHIPPER, OWNERS SHALL ISSUE THE SAME AGAINT CHARTS LOI AND AGAINTS SURRENDER OF ORIGINAL FIRST SET OF BILL OF LADING.

**Clause 100.** - Deleted

**Clause 101.**

Owners confirm that the vessel is grain fitted/self-trimming for full and complete homogeneous cargo. Otherwise, grain loading to be done as per vessel's grain manual.

**Clause 102.**

Charterers have option to load intention cargo on deck/hatch cover in accordance with vessel's strength and stability and up to Master's discretion which not to be withheld unreasonably. All Bill(s) of Lading for deck cargo to be marked "Shipped on deck at Charterers/Shippers/Receivers risk and expenses".

**Clause 103.**

Charterers may supply Ocean Routes limited to the reknowed firm, weather service to Master/vessel during any voyage under present Charter-Party. The Master is to comply with the reporting procedure of the weather service, also to follow recommendations with regard the optimum course, but the final decision to be subject to Master which should be reasonable. Vessel performance shall be monitered by Ocean route if Charterers so require. In case of discrepancy between log book and navitech, then masters log report will be sent to another routing (ocean routes) company for an performance evlaution analysis, cost for conducting analysis will be shared equally. If Charterers maintain that they have a valid performance claim against the vessel's speed and/or consumption, prior to making any speed claims, it is to be taken into account that in case there is any credit on consumption or speed of the vessel then same to be adjusted against a speed/consumption claim. Total sea passage to be calculated for the complete voyage from vessel's delivery to redelivery as a whole.

**Clause 104.**

15

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

Charterers have the option of breaking 'IWL' with Owners' prior permission which not to be unreasonably withheld against paying additional insurance premium on presentation of vouchers but the amount not to exceed charged by underwriters of Lloyd's London.

**Clause 105.**

From the date of coming into force of the international safety management (ISM) code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that both the vessel and the company (as defined by ISM code) shall comply with the requirements of all ISM code. Upon request the Owners shall provide a copy of the relevant document of compliance (DOC) and safety management certificate (SMC) to Charterers, except as otherwise provided in this Charter Party, loss, damage, expenses or delay caused by failure on the part of the Owners or 'The Company' to comply with the ISM code shall be for the Owners' account.

**Clause 106. – Deleted**

**Clause 107. COMMUNICATION FEE**

Charterers to pay USD1,200 per month or pro-rata for covering all cable, communications, victualling, representation and entertainment but no spirits and CIGS to be provided.

**Clause 108. DRY DOCK CLAUSE**

NO DRY DOCK DURING THE CHARTER PERIOD EXCEPT IN EMERGENCY CASE

**Clause 109. – Deleted**

**Clause 110. BOTTOM CLEANING**

If the vessel is on a port for more than 30 days or idle at a safe anchorage for more than 30 days, Owners to appoint divers to check hull bottom and report with signature to Charterers. If Charterers need hull bottom cleaning at their discretion, Charterers are to bear the cost of hull bottom cleaning. Owners shall endeavour to carry out bottom cleaning at next available port where such facilities are available. Vessel is to remain on-hire during the cleaning operation.

However, when practical, the bottom cleaning should take place at the port where the ship has been laying for more than 30 days, but if it is not practical to do so and cleaning has to take place at another location, Charterers have no right to lodge a speed or bunker claim against the Owners during the period the vessel is in a fouled condition and enroute to the port identified where the hull cleaning is to be undertaken.

**Clause 111. CONWARTIME 1993**

CODE NAME " CONWARTIME 1993" TO BE INCLUDED IN THIS CHARTER PARTY.

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

(1) For the purpose of this Clause, the words :

(a) "Owners" shall include the shipowners, bareboat Charterers, disponent Owners, managers or other operators who are charged with the management of the vessel, and the Master, and

(b) "War Risks" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crew or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or likely to be or to become dangerous to the vessel, her cargo, crew or other persons on board the vessel.

(2) The vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the vessel, her cargo, crew or other persons on board the vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the vessel be within any such place as aforesaid, which only become dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(3) The vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerents right of search and/or confiscation.

(4) (a) The Owners may effect war risks insurance in respect of the Hull and Machinery of the vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks), and the premiums and/or calls therefore shall be or their account.
(b) If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the vessel is within, or is due to enter and remain within, any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimburse by the Charterers to the Owners at the same time as the next payment of hire is due.

17

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

(5) If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

(6) The vessel shall have liberty:-

(a) to comply with all orders, directions, recommendations or advice as to departure, arrival, routes, sailing in convoy, port of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the vessel sails, or other Government to whose laws the Owners are subject, or any Government, body or group whatsoever acting with the power to compel compliance with their orders or directions:

(b) to comply with the order, directions or recommendations of any war risks Underwriters who have the authority to give the same under the terms of the war risks insurance:

(c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement:

(d) to divert and discharge at any other port any cargo or part thereof which may render the vessel liable to confiscation as a contraband carrier,

(e) to divert and call at any other port to change the crew or any part thereof or other persons on board the vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

(7) If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers.

No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for such discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

(8) If in compliance with any of the provisions of sub-clauses (2) to (7) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfillment of this Charter Party.

**Clause 112. BUNKER CARRIER SAFETY CLAUSE**

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

(A) The Charterers shall instruct the terminal operators or their representatives to co-operate with the Master in completing the IMO ship/shore safety checklist and shall arrange all cargo operations strictly in accordance with the guidelines set out therein.

(B) In addition to the above and notwithstanding any provision in this Charter Party in respect of loading/discharging rates, the Charterers shall instruct the terminal operators to load/discharge the vessel in accordance with the loading/discharging plan, which shall be approved by the Master with due regard to the vessel's draught, trim, stability, stress or any other factor which may affect the safety of the vessel.

(C) At any time during cargo operations the Master may, if he deems it necessary for reason of safety of the vessel, instruct the terminal operators or their representatives to slow down or stop the loading or discharging.

(D) Compliance with the provisions of this clause shall not affect the counting of hire.

**Clause 113. - Deleted**

**Clause 114. - Deleted**

### Clause 115. HAMBURG RULES CHARTER PARTY CLAUSE

Neither the Charterers nor their agents shall permit the issue of any Bill(s) of Lading, Waybill or other document evidencing a contract of carriage (whether or not signed on behalf of the Owners or on the Charterers' behalf or on behalf of any sub-Charterers) incorporating, where not compulsorily applicable, the Hamburg Rules or any other legislation giving effect to the Hamburg Rules or any other legislation imposing liabilities in excess of Hague or Hague/Visby Rules. Charterers shall indemnify the Owners against any liability, loss or damage which may result from any breach of the foregoing provisions of this clause.

### Clause 116 U.S. ANTI DRUG ABUSE ACT 1986 CLAUSE FOR TIME CHARTERERS

(A) In pursuance of the provisions of the U.S. Anti Drug Abuse Act 1986, or any re-enactment thereof, the Charterers warrant to exercise the highest degree of care and diligence in preventing unmanifested narcotic drugs and marijuana to be loaded or concealed on board the vessel.

Non-compliance with the provisions of this clause shall amount to breach of warranty for the consequences of which the Charterers shall be liable and shall hold the Owners, the master and the crew of the vessel harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them individually or jointly.

Furthermore, all time lost and all expenses incurred, including fines, as a result of the Charterers' breach of the provisions of this clause shall be for the Charterers' account and the vessel shall remain on hire.

19

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

Should the vessel be arrested as a result of the Charterers' non-compliance with provisions of this clause, the Charterers shall at their expenses take all reasonable steps to secure that within a reasonable time the vessel is released and at their expenses put up bail to secure release of the vessel.

The Owners shall remain responsible for all time lost and all expenses incurred, including fines, in the event that unmanifested narcotic drugs and marijuana are found in the possession or effects of the vessel's personnel.

(B) In pursuance of the provisions of sub-clause (a) above, the Owners and the Charterers warrant that they shall both become signatories to the sea carrier initiative agreement on signing this Charter Party or on delivery of the vessel under this Charter, whichever is the earlier, and will so remain during the currency of the Charter.

### Clause 117. U.S. SECURITY CLAUSE FOR TIME CHARTERING

If the vessel calls in the Unite States, including any U.S. territory, the following provisions shall apply with resfect to any applicable security regulations or measures:

Notwithstanding anything else contained in this Charter Party all costs or expenses arising out of or related to security regulations or measures required by any U.S. authority including, but not limited to security guards, launch services, tug escorts, port security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the Owners' negligence.

### Clause 118.

It is expressly agreed that during the currency of this Charter Party no Through Bills of Lading are to be issued.

### Clause 119.

Separations between cargoes, other than natural, to be for Charterers' account/risk and expense.

### Clause 120. SAFE STOWAGE AND TRIMMING

Charterers are to leave the vessel in safe and seaworthy trim and with cargo on board safetly stowed, dunnaged and secured to the Master's satisfaction for all shifting between berths and all passages between ports under this Charter in their time and at their expenses.

### Clause 121.

Vessel to be delivered with valid and up to date vessel's special cargo gear certificate to call in Saudi Arabia on board and if this does expire during the whole period of this Charter Party and renewal of certificates is necessary, loss of time and delay of vessel and any expenses included therefrom to be for Owners' account. The same certificates shall provide to Charterers in any time/places during this Charter Party period if required by Charterers.

Owners guarantee to submit cargo gear certificate for calling Saudi Arabian ports from six major class (I.E. DNV/BV/GL/LR/NK/ABS) at Charterers first loading port. Lost of time and delay of vessel and any expenses included therefrom to be for Owners' account.

20

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

**Clause 122. - Deleted**

**Clause 123.**
- OWNERS CONFIRM THAT THE VESSEL IS :-
i) SINGLE DECK SELF TRIMMING BULK CARRIER VSLS HOLDS/HATCHES ARE CLEAR,
FREE OF WATERWAYS AND UNOBSTRUCTED WITHOUT CENTRELINE BULKHEAD.
ii) FULLY COMPLIANCE WITH ISPS / ISM CODE (BIMCO ISM / OIL POLLUTION
CONDITIONS AND CERTIFICATES THEROF .
iii) FULLY FITTED TO LOAD/STOW/CARRY N DISCH CHTRS' INTENDED CGO.
iv) FULLY CLASSED LLOYDS HIGHEST OR EQUIVALENT AND MEMBER OF IACS
THRUOUT THE DUR OF THIS C/P.
v) FULLY P&I AND HNM COVERED THROUGHOUT THE DUR OF THE C/P VOY.
vi) NOT BLACK LISTED/BOYCOTTED OR ARRESTED DUE TO VSLS FLG/OWNERSHIP/
CREW EMPLOYMENT/AGE/PAST TRADING IN COUNTRIES UNDER THIS CHARTER PARTY.
vii) NO ISRAELI INTEREST AND NOT BLACK LISTED BY ARAB LEAGUE COUNTRIES
viii) VSL IS FREE OF ALL ENCUMBRANCES, ARRESTS AND MARITIME LIENS
ix) SHOULD VESSEL BE CAPTURED OR SEIZED OR ARRESTED OR DETAINED DURING
THE CURRENCY OF THIS CHARTER PARTY AT THE SUIT OF ANY PERSON HAVING OR
PURPORTING TO HAVE A CLAIM AGAINST VESSEL OR ANY INTEREST IN THE VESSEL
HIRE UNDER THIS CP SHALL NOT BE PAYABLE IN RESPECT OF ANY PERIOD WHILST
THE VSL REMAINS UNDER CAPTURE OR SEIZURE OR ARREST OR DETENTION AND
REMIANS UNEMPLOYED AS THE RESULT OF ANY SUCH CAPTURE OR SEIZURE OR
ARREST OR DETENTION. THIS CLAUSE SHALL BE INOPERATIVE SHOULD THE ARREST
OR DETENTION BE CAUSED THROUGH THE ACT OF OR BE CONNECTED WITH THE CHTRS
x ) VSL HAS ALL CERTIFICATES INCLUDING VALID AND IN ORDER FOR THE
DURATION OF THE CHARTER.

**Clause 124.**
In case Charterers to load steel and/or unpacked manufactured good and/or newsprint and/or similar sensitive
cargo, Charterers arrange surveyor to carry out preshipment survey by themselves. In case Owners arrange
said survey, cost to be for Owners' account. If Charterers and Owners decide to arrange mutually a P and I
surveyor for such preloading survey then the cost of same to be shared 50/50.

////////////////////////////////////////////////////////////////////////////////////////////////////////////////

## ADDITIONAL CLAUSES TO MV "HUYUTEC"/ USL
## CHARTER PARTY DATED 02ND APRIL, 2007

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery.

### NEW BOTH-TO-BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this Charter Party fails to be determined in accordance with the laws of the United States of America, the following clause shall apply:

### BOTH TO BOTH BLAME COLLISION CLAUSE

If the ship comes into collision with another ship as result of the negligence of the other ship and any act, neglect or default of the master mariner, pilot or the servants of the carrier in the navigation or in the management of the ship, the Owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the Owners of the said goods, paid or payable by the other non-carrying ship or her owners of the said goods and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact.

***** End *****

22